## CLARENCE MILLER v. THE STATE.

No. 11132. Delivered December 14, 1927.
Rehearing granted State February 13, 1929.
Rehearing denied Appellant, June 12, 1929.

The opinion states the case.

*Mathews & Folley* and *W. W. Kirk* of Floydada, for appellant.

*Meade F. Griffin,* District Attorney, of Plainview, and *A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—The offense is transporting intoxicating liquor; the punishment, confinement in the penitentiary for one year.

The circumstances relied upon by the state are, substantially, as follows: Ed. Griffin, deputy city marshal of Floydada, who lived across the street from the residence of J. W. Mathews, saw appellant about 1:30 p. m. in front of Mathews' house. A Chevrolet roadster was standing in front of the house, but the officer did not see it when it was driven to the point where it was parked. When appellant was first seen by Griffin, he was out of the car, and was carrying a fruit jar case from the car to the house, in a manner indicating that it was full and wet. On reaching the house, Mathews held the door open for appellant and they both went into the house. Shortly after taking the case into the house, appellant and Mathews got in the car and started to drive away, but stuck in a mud hole and had to push the car out. Griffin looked out of his door and talked to the parties. About fifteen minutes after the case was taken into the house, Mathews carried a fruit jar case from the house to the toilet, which was outside and back of the house, and placed said case near the toilet. Griffin went to town and notified P. G. Stegall, Sheriff of Floyd County, and G. R. Strickland, City Marshal of Floydada, of the occurrence. A search warrant was secured and Griffin, Stegall and Strickland searched the residence and premises of Mathews, but appellant was not present at the time. Nine fruit jars, which contained a small amount of whiskey, were found near the toilet, where they had been placed by Mathews. It appeared, from the fact that the bottom of the fruit jar case was wet, that there had been a broken jar in the case. Griffin testified that the case found near the toilet looked like the case he had seen appellant carry to the house. While the officers were searching the premises, Mathews came out on his gallery with an enamel container, which contained some sort of fluid, emptied it and went back into the house. The officers examined the place where the container had been emptied and found whiskey in a puddle on the ground. About three o'clock

on the afternoon of the same day, the officers searched appellant's car, but found no sign of intoxicating liquor in it. There was no smell of liquor in the car. As the officers left Mathews' house after the search, according to their testimony, they met appellant going towards Mathews' house. When appellant saw the officers, he turned off down a by-way which, according to the witness Strickland, was a kind of pasture. Stegall described the incident as follows: "I saw the defendant that afternoon. As to whether I know where he was going, well, we were coming back to town after searching the premises, and on this side of the railroad the defendant met us in a car, and when he saw us he took off around the turn and came back to town and didn't meet us."

Appellant did not testify in his own behalf, but it was shown by the testimony of his witnesses that his car was parked in town at the time the officers testified that they met him going toward the house of Mathews.

It was developed upon the motion for new trial, by way of newly discovered evidence, that the officers were mistaken in the identity of the party seen by them immediately after the search coming towards Mathews' house. The testimony on the trial was to the effect that as the officers were leaving Mathews' house after the search, they met appellant coming toward the house in a car, and, that when he saw them, he turned off down a by-way and came back to town. The testimony of P. G. Stegall on the motion for a new trial shows that, after the search, he started to town in a car with Mathews, Strickland and Griffin; that they met a Chevrolet roadster; that Stegall and his companions were about twenty steps from the Chevrolet when it turned across the bridge at the Consumer's Filling Station, that Stegall stopped his car, let Griffin and Mathews out and then turned across the bridge after the Chevrolet; that he didn't see the car after he crossed the bridge; that it was his best judgment that appellant was driving the Chevrolet roadster. The testimony of G. R. Strickland on the motion was to the effect that the car followed by Stegall and himself went east of the Consumer's Filling Station, and south across the railroad track, and that said car did not go into the yard of the Texhoma warehouse. The witnesses upon whose testimony the motion for a new trial was predicated showed in the testimony on the motion, in substance, that at about 2:30 or 3 p. m., on the day of the search Roy Brewer drove the Chevrolet roadster of Lawrence Lewis to the Texhoma warehouse; that Brewer crossed

the bridge testified to by the officers and turned southeast and drove inside a high fence surrounding the Texhoma warehouse; that as Brewer turned across the bridge, Stegall, who had stopped his car in order to let Mathews and Griffin out, ran after Brewer; that appellant's car and the car driven by Brewer were very much alike, and that, as one witness testified, you could hardly tell the cars apart.

The record discloses that the motion for a new trial is properly verified, that the affidavits of the witnesses reciting the facts within their knowledge relative to the new evidence were attached to the motion, that the new testimony came to the knowledge of appellant and his attorneys for the first time after the trial, and that it was not owing to the want of due diligence by appellant and his attorneys that the testimony was not discovered sooner.

We think the newly discovered evidence was material. The testimony of the officers was obviously calculated to lead the jury to believe that appellant fled because he had guilty connection with the whiskey found in Mathews' home. When it is recalled that Mathews was in the car with the officers when they said they saw appellant, and that one of the officers had testified to having seen appellant at Mathews' house with a fruit jar case shortly before the search, the prejudicial nature of the testimony is apparent. It would have been but natural for one having a guilty connection with the transaction to have avoided the officers under such conditions. The state relied upon circumstances for a conviction. Can it be said that the result of the trial would have been the same if it had been shown that the officers were mistaken in their testimony concerning the occurrence in question? We think not. The new evidence cannot be classed as impeaching only. As said in Barrett v. State, 267 S. W. 511: "There is a clear distinction between testimony which could only impeach a witness who had testified in the trial, and evidence showing that such witness was mistaken about a matter material to the state's case."

Being of the opinion that a new trial should have been granted on account of newly discovered evidence, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—As stated in the original opinion, the appellant on his motion for new trial introduced several witnesses tending to show that the person whom the officers testified they saw after the search of Mathew's house was not the appellant but was Roy Brewer. The appellant did not testify in his own behalf upon the trial but upon the motion for new trial did take the stand as a witness. The only testimony which he gave was the following:

"My height is about five feet, eleven inches. My weight is 145 or 150 pounds. I don't know for sure which it is."

That in passing upon a motion for new trial based upon alleged newly discovered evidence the trial court is vested with a sound discretion not to be overturned on appeal in the absence of abuse is a fixed principle in the law of this state. Burns v. State, 12 Tex. Crim. App. 270, and many other cases collated in Vernon's Ann. Tex. C. C. P., 1925, p. 15, note 26. Among them are Gordon v. State, 88 Tex. Crim. Rep. 17; Lewis v. State, 82 Tex. Crim. Rep. 285; Banks v. State, 95 Tex. Crim. Rep. 384; Viser v. State, 98 Tex. Crim. Rep. 201; Trigg v. State, 99 Tex. Crim. Rep. 376; Inman v. State, 100 Tex. Crim. Rep. 527; Runnels v. State, 101 Tex. Crim. Rep. 434; Coleman v. State, 108 Tex. Crim. Rep. 323.

One accused of crime has a right to remain silent. A comment upon his failure to testify is forbidden. When, however, he becomes a witness in his own behalf, he voluntarily subjects himself to the same tests of truth as is applied to any other witness. Huffman v. State, 28 Tex. Crim. App. 177, and other cases collated in Branch's Ann. Tex. P. C., Sec. 147; Wharton's Crim. Evidence, 10th Ed., Secs. 430 and 432. Whether it was the appellant who the officers met and who, upon observing them fled, or turned aside from his way, was a matter within the knowledge of the appellant. Upon the motion for rehearing, as well as upon the trial, the State's witnesses identified the appellant as the person whom they met. Having taken the stand as a witness in his own behalf, and having failed to deny the truth of the State's witnesses upon the subject, the trial court was privileged to draw from such failure the inference that the appellant was not in a position to make the denial. Having filed a motion asserting that since the trial he had discovered material evidence in his behalf and that it would be likely to bring about a different result upon another trial, the appellant assumed the burden

of making proof of his averment. In view of the failure of the appellant, either in his motion for new trial or his testimony on the hearing of the motion, to deny seeing and avoiding the officers, this court would not be justified in declaring that in refusing to grant the motion there was an abuse of discretion vested in the trial court.

The motion for rehearing is granted, the order of reversal is set aside and the judgment of the trial court is affirmed.

*Reversed and affirmed.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—The only ground of the reversal ordered in the original opinion in this case was that newly discovered evidence, set out in the motion for new trial, cast serious doubt upon the identity of appellant as the party observed by the officers indulging in suspicious movements following a whisky raid made by said officers in which it was claimed sufficient testimony came to light to justify the conviction of appellant for transporting intoxicating liquor. When the matter came before this court upon the State's motion for rehearing, the ground upon which same was granted was that when the motion for new trial came before the lower court appellant,— who had prior thereto not taken the witness stand,—did then testify, and that having done so, knowing that the sharp issue in the case was the identity of the party above referred to,—then wholly failed to claim or state that he was not the party seen by the officers directly after the raid aforesaid. The trial court upon hearing the motion decided it against appellant. The judge had the right to give much weight to the failure of appellant to deny being the party so acting suspiciously, as above referred to. Said judge doubtless did attach much weight to this circumstance., We must adhere to the correctness of the rulings of trial courts unless it be clearly shown that same are wrong or in abuse of the discretion of the court below. In so holding we but follow precedents numerous and well considered. We see no reason for changing the views expressed in the judgment of affirmance.

Appellant's motion for rehearing will be overruled.

*Overruled.*